UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLPH ANTHONY DUBORD IV,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:20-cv-634-KJM-KJN<br><br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 22, 27) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II the Social Security Act.[1] In his motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred in (A) failing to consider his disability rating from the Department of Veterans Affairs ("VA"); (B) analyzing the opinions of medical, non-medical and state-agency sources; (C) failing to articulate clear and convincing reasons for rejecting plaintiff's subjective-symptom testimony; and (D) failing to consider a lay-witness statement. The Commissioner contends in its cross-motion that the ALJ's decision is supported by substantial evidence and free from legal error.

////

////

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15) for the entry of findings and recommendations. See Local Rule 304.

1

For the reasons set forth below, the court recommends plaintiff's motion be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

**I.      RELEVANT LAW**

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) (Title II). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2] 20 C.F.R. § 404.1520(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical

---

[2]   The sequential evaluation is summarized as follows:
**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

## II.  BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In December of 2018, plaintiff applied for Disability Insurance Benefits, alleging disability due to "post-traumatic stress disorder, back problems, degenerative lumbosacral condition, tinnitus, radiculopathy left and right lower, thoracolumbar spine degenerative disc disease, and 'bilat' knee." (See Administrative Transcript ("AT") 71 and 176, electronically filed at ECF No. 14.) Plaintiff's application was twice denied, and he sought review with an ALJ after retaining counsel. (See AT 84, 100, 107, 116.) The ALJ held a hearing on October 30, 2019, where plaintiff testified about his symptoms and a Vocational Expert ("VE") testified regarding jobs for someone with plaintiff's limitations. (See AT 34-69.)

On December 3, 2019, the ALJ issued a decision determining plaintiff was not disabled from his onset date forward. (AT 15-27.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 24, 2017. (AT 17.) At step two, the ALJ noted plaintiff had the following severe impairments: post-traumatic stress disorder, lumbar degenerative disc disease, status post right knee strain, and obesity. (Id.) At step three, the ALJ determined plaintiff was not disabled under the listings. (AT 18, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that "he is limited to understanding, remembering and carrying out simple, routine and repetitive tasks; use of judgment is limited to simple work-related decisions; and he is capable of occasional interaction with supervisors, coworkers and the public." (AT 20.) In fashioning this RFC, the ALJ stated he considered plaintiff's symptoms, the medical and other evidence, and the medical opinions and prior administrative medical findings in the record. (Id.) Relevant here, the ALJ found the opinion of Dr. Shanmugham, a VA psychiatrist, "not persuasive" because it was (i) "unsupported by the objective findings from this psychiatrist, but rather [was] just diagnosis and prescription

3

information," and (ii) "not consistent with evidence of record [showing] that other than objective reports of depressed or dysphoric mood, as well as flat affect or similar findings, and one finding of disheveled appearance, the claimant has routinely had normal objective mental findings." (AT 25.) Further relevant, the ALJ summarized the records of plaintiff's mental status examinations, as generated by his social worker Mr. Fuller (AT 22), but did not otherwise address the social worker's opinions on plaintiff's mental limitations. (See AT 643-44, 654.) Instead, the ALJ relied heavily on the prior administrative medical findings. (AT 24-25.) Additionally, the ALJ rejected the more limiting aspects of plaintiff's subjective symptom testimony, noting they were "neither entirely consistent nor entirely supported by the evidence," and also were inconsistent with his daily activities, conservative treatment, and prior statements. (AT 23-24.) Finally, the ALJ summarized reports from plaintiff's sister (AT 19), but did not specifically address her third party functional report she submitted prior to the initial disability determination. (See ECF No. 199-206.) Based on the RFC and the VE's testimony, the ALJ concluded that while plaintiff was incapable of performing past relevant work, there were jobs existing in significant numbers in the national economy that plaintiff could perform. (AT 26.) These included office helper, ticket taker, and investigator-dealer accounts, with approximately 150,000 jobs in the nation. (Id.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 27.)

The Appeals Council denied plaintiff's appeal. (AT 1-5.) Thereafter, plaintiff filed this action requesting review of the ALJ's decision, and the parties moved for summary judgment. (ECF Nos. 1, 22, 27.)

### III. DISCUSSION

Plaintiff contends the ALJ erred in failing to (A) consider the 90-100% disability rating from the VA; (B) finding the "outdated" opinions of the state-agency physicians and psychiatrists more probative than those of Dr. Shanmugham, plaintiff's psychiatrist, and Mr. Fuller, plaintiff's therapist; (C) articulate clear and convincing reasons for rejecting plaintiff's subjective-symptom testimony; and (D) failing to consider the statement of plaintiff's sister. Thus, plaintiff requests this court remand either for a payment of benefits or for further proceedings. (ECF No. 22.)

The Commissioner requests affirmance, arguing the current regulations and substantial

evidence supports the ALJ's findings regarding the VA's rating, the evaluation of the medical and nonmedical opinion evidence and prior administrative medical findings, and the subjective-symptom and lay testimony. (ECF No. 27.)

**A. VA Disability Rating.**

Plaintiff's first contention is that the ALJ committed error by failing "to give any reasons for rejecting Plaintiff's VA Disability Rating," wherein he was rated 90% disabled based on his PTSD and degenerative lumbosacral disease and, later, 100% disabled because of his PTSD.

Under prior regulations and case law, an ALJ not only was required to consider the VA's determination in reaching a disability determination, but also was to give it "great weight," or "less weight . . . if he gives persuasive, specific, valid reasons for doing so that are supported by the record." See McCartey v. Massanari, 298 1072, 1076 (9th Cir. 2002) (citing a prior version of the regulation that only noted determinations by other agencies were not binding on the Commissioner). However, under new regulations, which apply to claims filed on or after March 27, 2017, the ALJ is not required to articulate "any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. Thus, the new regulation appears to remove any requirement for an ALJ to discuss another agency's rating. Because plaintiff filed his claim with the Commission in December of 2018 (see AT 71), the new regulations apply. Thus, it was not error for the ALJ to wholly ignore plaintiff's VA's rating. See, e.g., Diaz v. Commr, 2020 WL 2732027, at *3 (E.D. Cal. May 26, 2020) (finding no error under the new regulations in the ALJ's ignoring of another agency's disability rating); Edward L. C. v. Comm'r, 2019 WL 6789813 at *2 (W.D. Wash. Dec. 12, 2019) (same); Kathleen S. v. Comm'r, 2019 WL 4855631 at *7-8 (W.D. Wash. Oct. 2, 2019) (same).

Instead, the new regulations require the ALJ to consider "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision." 20 C.F.R. § 404.1504. This aligns with the requirement from McCartey—as both case law and the regulations direct the analysis away from an agency's rating and toward the underlying evidence.

This is exactly what the ALJ did here. (See AT 22-23, summarizing plaintiff's VA medical records.) Plaintiff does not challenge the ALJ's assessment of this evidence, nor the validity of the revised Section 404.1504. (See ECF No. 22 at 14-15.)

**B. Medical, Opinion, and Other Evidence.**

**Legal Standards**

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence. See <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01 (January 18, 2017) (available at 2017 WL 168819). For applications filed on or after March 27, 2017,[3] the new regulations state an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [plaintiff's] medical sources." See 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a). In determining how "persuasive" the opinion of a medical source or PAMF is, an ALJ must consider the following factors:

---

[3] For applications filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff . . . ." <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). This "treating physician rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> However, the agency has moved away from this hierarchy. See 82 Fed. Reg. 5844.

In doing so, it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review, as appeals of decisions governed by the new regulations are only just beginning to reach the district courts. In the absence of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that longstanding general principles of judicial review—especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017. Cf, e.g., <u>Jones v. Saul</u>, 2021 WL 620475, *10 (E.D. Cal. Feb. 17, 2021) (finding the ALJ permissively found a doctor's opinion unpersuasive by accurately noting the inconsistency between it and treatment notes, relying in part on <u>Valentine v. Comm'r</u>, 574 F.3d 685 (9th Cir. 2009) (a contradiction between an opinion and treatment notes constitutes a "specific and legitimate" reason for rejecting the opinion)); with <u>Mark M. M. v. Saul</u>, 2020 WL 2079288, *5 (D. Mont. Apr. 29, 2020) (finding the ALJ failed to "link purportedly inconsistent evidence with the discounted medical opinion," relying on <u>Magallanes v. Bowen</u>, 881 F.2d 747 (9th Cir. 1989) (ALJ must provide a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon)).

supportability, consistency, treatment relationship, specialization, and "other factors." § 404.1520c(b), (c)(1)-(5). Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. § 404.1520c(a)-(b).

In all cases, the ALJ must at least "explain how [she] considered" the supportability and consistency factors, as they are "the most important factors." § 404.1520c(b)(2). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(1). For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(2). The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only when "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." § 404.1520c(b)(2)&(3). Finally, the regulations allow an ALJ to address multiple opinions from a single medical source in one analysis. § 416.920c(b)(1) ("source-level articulation").

**Analysis**

Plaintiff takes issue with multiple aspects of the ALJ's resolution of the opinion evidence, contending the RFC is fundamentally flawed. Plaintiff argues the ALJ: (1) failed to address two letters from plaintiff's therapist David Fuller, a licensed clinical social worker; (2) failed to obtain all records from plaintiff's treating psychiatrist Dr. Shanmugham; (3) misconstrued the PAMFs regarding plaintiff's mental limitations; and (4) failed to fully account for plaintiff's inability to stand and walk more than 6 hours per day, as expressed by the reviewing physicians in the PAMFs. (ECF No. 22 at 15-22.)

The Commissioner argues the ALJ's findings are properly explained, contain no legal error, and are supported by substantial evidence, as below. (ECF No. 27 at 22-29.)

////

1. Social Worker Fuller's Opinions

Plaintiff first argues the ALJ failed to address two letters from plaintiff's therapist David Fuller, a licensed clinical social worker, who opined plaintiff (i) was not likely to hold gainful employment because of his PTSD, and (ii) requires an emotional support dog "to enable him to function in society." (See AT 643-44, 654.) Plaintiff contends the ALJ's failure to mention either of these letters constitutes error under both the prior and new regulations. Plaintiff notes that for cases filed prior to March 27, 2017, an ALJ was required to give "germane" reasons for discounting the opinion of individuals like social workers. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016) (holding that [under the prior regulations], an ALJ "may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for going so"). However, plaintiff argues the new regulations have wiped away the distinctions between other medical sources and physicians/psychologists, and so for claims filed after March 27, the ALJ was required to provide specific and legitimate reasons for rejecting opinions like those of a licensed social worker. (ECF No. 22 at 16-17, citing Lester, 81 F.3d at 830and 20 C.F.R. § 404.1513 (categories of evidence).) The text of the new regulations indicates otherwise.

Under the new regulations, an ALJ's burden to articulate findings on the persuasiveness of depends on a host of factors—but only for medical opinions or prior administrative medical findings. 20 C.F.R. 404.1520c(c). Conversely, the ALJ is not required to articulate how he/she considered "evidence from nonmedical sources." 20 C.F.R. 404.1520c(d). Nonmedical sources include "[p]ublic and private social welfare agency personnel." 20 C.F.R. § 404.1502(e)(3); see also, e.g., Burdine v. Saul, 2020 WL 4339493, at *8 (E.D. Cal. July 28, 2020) (noting that plaintiff's licensed clinical social worker was not considered an acceptable medical source). Thus, these new regulations plainly allowed the ALJ to resolve plaintiff's case without articulating findings on Mr. Fuller's two letters. Plaintiff does not challenge the validity of Section 404.1520c(d).

Further, to the extent the ALJ is required to "consider" all evidence, including statements from nonmedical sources, the court is satisfied that the ALJ did not cherry-pick the record to construct a result. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (an ALJ's

"selective . . . reliance" on the record does not meet the substantial-evidence standard). The ALJ summarized the evidence from plaintiff's mental status examinations and group therapy sessions on which Mr. Fuller's opinions would have been based, and took note of various issues noted therein. (See AT 22.)

2. Psychiatrist Dr. Shanmugham's Opinions

Plaintiff also argues the ALJ failed to articulate legally-sufficient reasons regarding the October 2019 medical opinion of Dr. Shanmugham, plaintiff's "treating" psychiatrist. Dr. Shanmugham opined, among other things, that plaintiff: (i) "gets easily frustrated due to his limitations"; (ii) could perform "simple tasks for less than 10 percent of the day"; (iii) had irritability that limited his ability to deal with the pubic to "about 10-30% [of the] day"; (iv) could receive and carry out instructions from supervisors for 20-40% of the time; and (v) had "poor ability" to relate and interact with co-workers. (AT 642.) The ALJ found this opinion "not persuasive," reasoning:

> [T]here is no supporting statement provided for such extreme limitations and the record does not demonstrate any objective findings from this psychiatrist, but rather just diagnosis and prescription information. Further, it is not consistent with evidence of record that shows that, other than objective reports of depressed or dysphoric mood, as well as flat affect or similar findings, and one finding of disheveled appearance, the claimant has routinely had normal objective mental findings.

(AT 25, citations omitted).) Plaintiff contends the VA only provided Dr. Shanmugham's health summaries, but not his treatment notes, and so the ALJ's discounting of the psychiatrist's opinion for lack of support runs afoul of the ALJ's duty to "conduct an appropriate inquiry" into the basis of the opinion. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1988); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (noting an ALJ cannot just assume a medical opinion was based on unwarranted assumptions, and had a duty to supplement the record in such an instance). Further, plaintiff argues the ALJ erred in his consistency analysis, as the records cited to by the ALJ were "more cursory" than other records.

On the supportability issue, the court concurs with plaintiff. The Ninth Circuit has held that an ALJ has a duty to develop the record, even where the claimant is represented by counsel.

Smolen, 80 F.3d at 1288. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Tidwell, 161 F.3d at 602 and Smolen, 80 F.3d at 1288). Here, the ALJ took none of the steps outlined by the Ninth Circuit, leading the court to conclude the ALJ erred.

The Commissioner contends the ALJ satisfied his duties by asking counsel at the hearing whether plaintiff had any objections to the record, and counsel expressed none. Given the fact that plaintiff bears the burden to prove his case in the first four steps, Ford, 950 F.3d at 1148, the Commissioner argues counsel's acquiescence, combined with the fact that the ALJ himself voiced no concerns about ambiguities or holes in the record, should result in a finding of no error. See Tonapetyan, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry.") (emphasis added). However, the court notes that in an unpublished case released around the time of Tonapetyan, the Ninth Circuit found the ALJ's failure to supplement was "compounded by the fact that the ALJ did not simply adjudicate [plaintiff's] application on a deficient record, but used the absence of particular records (i.e., physician's notes and test results) to support the rejection of [the] treating physician's opinion." See, e.g., Miksch v. Massanari, 18 Fed. Appx. 632, 635 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150). This is the same situation as here, where the ALJ relied on the absence of records to cut against Dr. Shanmugham's opinion. (See AT 25 ("[T]he record does not demonstrate any objective findings from this psychiatrist, but rather just diagnosis and prescription information.").) The undersigned finds the reasoning of Miksch highly persuasive, and finds error in the ALJ's analysis here.

However, as the Commissioner notes, the ALJ also found Dr. Shanmugham's opinion unpersuasive because it was inconsistent with evidence elsewhere in the record. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The ALJ noted reports of depressed or dysphoric mood, and one instance of a disheveled appearance, but detailed how "plaintiff's mental status examinations were routinely normal." (AT 25, citing AR 282, 290-91, 293, 303, 306, 312, 365-66, 370-71, 535, 538-39.) Further, the ALJ noted similar inconsistencies in his summary of the medical evidence and resolution of plaintiff's symptom statements. (See AT 22-24.) These records and findings contrast Dr. Shanmugham's opinions on plaintiff's abilities to interact with others, perform tasks, carry out instructions, and exist without getting frustrated. Thus, the ALJ's finding that Dr. Shanmugham's opinion was inconsistent with the record satisfies the duty to articulate findings under the new regulations. See, e.g., Jones v. Saul, 2021 WL 620475, *10 (E.D. Cal. Feb. 17, 2021) (finding the ALJ legitimately found a physician's opinion unpersuasive by accurately noting the inconsistency between the opinion and the treatment notes, relying in part on Valentine v. Comm'r, 574 F.3d 685 (9th Cir. 2009) (a contradiction between an opinion and treatment notes constitutes a "specific and legitimate" reason for rejecting the physician's opinion)). Plaintiff's argument appears to be a request to reevaluate the consistency of this evidence, which the court cannot do. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

        3.   <u>Prior Administrative Medical Findings regarding Mental-Limitations</u>

Additionally, plaintiff argues the ALJ erred in relying on the prior administrative medical findings when considering the scope of plaintiff's mental limitations. Plaintiff contends the PAMFs held plaintiff to simple one- and two-step tasks, which are equated with Reasoning Level 1 in the Dictionary of Occupational Titles ("DOT"). See DOT at App. C, § III, 1991 WL 688702 (Reasoning Development Level 1: "Apply commonsense understanding to carry out simple one- or two-step instructions."; Reasoning Developmental Level 2: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions"). Thus, when the ALJ found plaintiff could work as an office helper or ticket taker, this constituted legal error because those positions require Reasoning Level 2. (See, ECF No. 22-1, DOT entry for "Office Helper," assigning "GED: R2".)

First, the ALJ did <u>not</u> formulate an RFC with simple 1-2 step tasks, but instead limited

11

plaintiff to "understanding, remembering and carrying out simple, routine and repetitive tasks," as well as "use of judgment [] to simple work-related decisions." (AT 20.) Courts have found this limitation equates to Reasoning Level 2. See, e.g., Tudino v. Barnhart, 2008 WL 4161443, at *10–11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks.") (citing Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) ("[L]evel-two reasoning appears more consistent with Plaintiff's [RFC]" to perform 'simple and routine work.'"); Meissl v. Barnhart, 403 F.Supp.2d 981, 984-85 (C.D. Cal. 2005) (finding that plaintiff's ability to perform "simple tasks . . . that had some element of repetitiveness to them" indicated a reasoning level of two); Flaherty v. Halter, 182 F.Supp.2d 824, 850 (D. Minn. 2001) ("[T]he DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks"); see also Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (agreeing in dicta that 'simple, repetitive' correlates more with a Level 2 Reasoning when holding "an apparent conflict [existed] between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."). Thus, the court sees no error in the ALJ's reliance on the VE's statement that plaintiff could perform the jobs of office helper, ticket taker, and investigator-dealer accounts, with approximately 150,000 jobs in the nation in total. (AT 26.)

Plaintiff is correct that the ALJ formulated this portion of the RFC by finding persuasive the opinions expressed in the PAMFs, which did express limitations to "simple 1-2 step tasks." (See AT 24, citing AT 81, 96.) However, these same findings also expressed that plaintiff would be "capable of simple tasks w/ limited public contact." (AT 76, 91.) Further, the ALJ noted that aside from plaintiff's depressed or dysphoric mood, he "would not be further limited because . . . he has routinely had otherwise normal findings with regard to his mental functioning . . . ." (AT 24.) The ALJ then cited to portions of the record in making this finding, which is sufficient to demonstrate that the RFC formulation is based on substantial evidence. Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not [a] physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).

////

### 4. Prior Administrative Medical Findings regarding Physical-Limitations

Finally, plaintiff notes that the ALJ relied upon the prior administrative medical findings to determine that he could perform light work with no physical restrictions. (AT 20.) Plaintiff argues the ALJ erred in crafting this RFC because the PAMFs limited him to 6 hours per day of standing and walking, and the RFC expressed no such limitation.

Light work under the regulations is defined as "a job [that] requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). As the Commissioner notes, Social Security Rule 83-10 has equated light work with "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." See SSR 83-10, available at 1983 WL 31251, at *6. At the hearing, the ALJ put to the VE a hypothetical that limited plaintiff to a light range of work. (AT 62.) Courts have consistently held that no error exists where these kinds of shorthand are used and easily understood. See Grether A. D. v. Saul, 2021 WL 1664174, at *7 (C.D. Cal. Apr. 28, 2021) (noting the ALJ asked the VE about an individual limited to medium work, and that SSR 83-10 defined the standing/walking limitations of medium work, when holding "[o]n this record, the ALJ's hypothetical questioning of the vocational expert was not materially incomplete") (collecting cases in accord).

**C. Subjective Symptom Testimony.**

**Legal Standards**

In evaluating a claimant's symptoms report, the following two-step analysis is applied:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017).

13

The ALJ's reasons for discounting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: inconsistencies between a claimant's testimony and his or her daily activities, the effectiveness of or noncompliance with a prescribed regime of medical treatment, and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); see also 20 C.F.R § 404.1529(c) (listing "factors relevant to [a claimant's] symptoms). A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Broadly speaking, a claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

**Analysis**

Plaintiff contends the ALJ's resolution of his subjective-symptom testimony fails the "clear and convincing" standard set forth by the Ninth Circuit. Plaintiff argues the ALJ's finding regarding inconsistent statements is based on a partial representation of plaintiff's actual testimony, and "the only other reason given by the ALJ rejecting Plaintiff's testimony was based the fact that he had not required psychiatric hospitalization or surgeries and did not take pain medications on a regular basis." (ECF No. 22 at 19-20.)

The ALJ summarized plaintiff's symptom testimony, which included (relevantly) plaintiff's reports of solitary living, daily activities, medicinal side effects, "panic attacks, flashbacks, night terrors, anger issues," difficulty processing issues, ceasing to attend therapy sessions, difficulties at his prior jobs, and difficulty with sleep, depression, and suicidal thoughts.

14

(AT 21-22.)  The ALJ found plaintiff's impairments could cause plaintiff's symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AT 22.)  The ALJ then summarized the medical evidence.  (AT 22-23.)  Turning back to plaintiff's testimony, the ALJ found it "neither entirely consistent nor entirely supported by the evidence," reasoning:

> For example, he testified that he had problems leaving the house due to suicidal thoughts, but he has repeatedly reported to his mental health and medical providers that he did not have any such thoughts (Ex. 1F/25, 2F/13 and 18, 3F/64, 4F/9, 19, 44 and 58, and Testimony).  He reported that he had numerous side effects to medications, but the record does not demonstrate any such reports to his treatment providers, and objective findings have routinely shown he was alert and oriented (Ex. 5E/1, 1F/17, 25-26, 28, 2F/13-14, 18-19, 38 and 41, 3F/64, and 4F/9 and 13).  Likewise, he has allegations of sleep difficulties, but he has not been objectively reported to appear fatigued, but rather has repeatedly been found to be alert and oriented (Ex. 5E/1, 1F/17, 25-26, 28, 2F/13-14, 18-19, 38 and 41, 3F/64, 4F/9 and 13, and Testimony).  Further, he has not required any inpatient psychiatric hospitalizations . . ., which are factors that are not consistent with the finding of disability in a younger individual.

(AT 23-24.)  Reviewing the ALJ's rationale, the undersigned finds the ALJ's combination of rationales provide clear and convincing reasons for his discounting of plaintiff's "intensity, persistence, and limiting effects" statements.  20 C.F.R § 404.1529(c)(1)-(3).

First, the ALJ noted the lack of support in the underlying medical evidence, and inconsistency therewith, to demonstrate intense, persistent, and limiting effects due to medicinal side effects or fatigue from lack of sleep.  (See AT 24, citing e.g. AT 282 (noting no signs of neglect and intact thought processes), 290-91 (same), 293 (same), 366 (same), 371 (same), 535 (same).)  This is permissible.  Rollins, 261 F.3d at 857 (noting a lack of support in the medical evidence cannot be the only reason to discount a plaintiff's testimony, but is a relevant factor for the ALJ to consider).

Second, the ALJ's considered plaintiff's prior statements to his medical professionals in denying extreme impairments like suicidal thoughts.  (See AT 24, citing AT 290, 365, 370, 457, 535, 545, 570, 584).  This analysis is permissible.  See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th

Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements).

Third, the ALJ was permitted to take into account plaintiff's relatively conservative treatment regarding his mental impairments, including the lack of hospitalizations and, as noted earlier in the decision, his attendance at group therapy (which he later ceased attending). See Tommasetti, 533 F.3d at 1039-40 (conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair, 885 F.2d at 604.

Fourth and finally, the court notes the ALJ's significant detailing of plaintiff's abilities to perform daily activities such as shopping, housework, attend appointments. (See AT 21-22) These do not detract from the ALJ's overall findings. See Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2011) ("Even where [everyday] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

**D. Lay Testimony.**

Lastly, plaintiff argues the ALJ erred in failing to acknowledge the statement of plaintiff's sister, which she provided to the agency prior to plaintiff's initial disability determination. (AT 199-205.) Therein, she stated plaintiff had limitations similar to those plaintiff expressed at the hearing, including difficulty interacting with others, difficulty working, and difficulty listening or paying attention. (See Id.) Plaintiff argues that under Ninth Circuit precedent, the ALJ is at least required to provide "germane" reasons for discounting a lay witness's testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Again, plaintiff fails to appreciate the change in the Commissioner's regulations, which do not require an ALJ to articulate how he/she considered "evidence from nonmedical sources." 20 C.F.R. 404.1520c(d). Nonmedical sources include "[f]amily members, caregivers, friends, neighbors, employers, and clergy." 20 C.F.R. § 404.1502(e)(4). Thus, these new regulations plainly allow for the ALJ to resolve plaintiff's case without articulating findings plaintiff's sister's statement. Plaintiff does not challenge the

validity of Subsection 404.1520c(d).

Further, to the extent the ALJ is required to "consider" all evidence, including statements from nonmedical sources, the court is satisfied that the ALJ did not cherry-pick the record to construct a result. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (an ALJ's "selective . . . reliance" on the record does not meet the substantial-evidence standard). The ALJ noted plaintiff's sister's statement in his Step Two findings, indicating the ALJ was aware of her reports and so considered them. (See AT 19.) Further, the court notes that the sister's reports were similar in nature to those plaintiff expressed at the hearing, which (as above) the ALJ properly rejected. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ provided germane reasons for rejecting third-party witness testimony similar to claimant's subjective testimony, when the ALJ provided clear and convincing reasons for rejecting claimant's subjective testimony); See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (contradictory evidence in the record is a germane reason for rejecting lay testimony).

### IV. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 22) be DENIED;
2. The Commissioner's cross-motion (ECF No. 27) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED; and
4. The Clerk of Court be directed to issue judgment in the Commissioner's favor and CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to

////

appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: June 2, 2021

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

dubo.634